IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NADER H. AHMED  
    Defendant/Petitioner,

vs.

THE UNITED STATES OF AMERICA,  
    Respondent.

Case No. 2:19-CR-00231-ES-1

## MOTION FOR PARTIAL REDUCTION IN SENTENCE

COMES NOW, Nader Ahmed (hereinafter known as "Petitioner"), pro se humbly requesting this Honorable Court GRANT a 12-24 month reduction in sentence, pursuant to 18 U.S.C. §3582(c)(1)(A)(i), due to a violation of Petitioner's Eighth Amendment Right to the United States Constitution and would offer the following in support:

### PRO SE STANDARD

"In a pro se case, the court must view the submission by a more lenient standard. 'Howevever inartfully pleaded, must be held to less stringent standards than formal pleadings dradted by lawyers.'" Govan v. Campbell, 289 F.Supp. 2d 289, 291 (N.D.N.Y. 2003); (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

### FACTS GIVING RISE FOR REDUCTION

1. On 12/12/2020, Lt. Goynor of Federal Medical Center Devens (FMC-Devens) announced two-inmates from J-A Unit (Petitioner Housing Unit) had tested positive for Covid-19 and the Unit was being locked down. Those two-inmates ultimately died.

2. From 12/12/2020 to 12/13/2020, all the inmates from J-A Unit were tested, resulting in an additional 25-inmates testing positive for Covid-19.

3. On 12/13/2020, the majority of inmates who'd tested positive were relocated to the Segregated Housing Unit (SHU), placed under quarantine, the handi-

capped or those confined to wheelchairs were quarantined in their cells (See Declerations Oneil Dasilva & Alex Medicine Horse).

4. On 12/16/2020, Assistant Warden Kimo Elraheb ordered the closing of commisary, making the purchase of over the counter medications and stamps unavailable to the entire inmate population.(See Grievance Thomas).

5. On 12/17/2020±, Inmate Orderlies, Steven Tomershea & Francis Jacques, were utilized/ordered by FMC-Devens Staff to: distribute food trays; handle inmate and medical trash; sort and distribute mail; and clean the showers between inmate use. They were not: instructed on how to safely handle medical waste; not provided proper Personal Protective Equipment (PPE); misinformed by staff regarding contagious inmates remaining in the unit and the potential for becoming infected by Covid-19 as apart of their duties.(See Decleration Steven Tomershea).

6. On 12/24/2020, those inmates quarantined in the SHU were returned to JA Unit. The vast majority still exhibiting/complaining of symptoms and highly contagious (See Declaration Michael Fitzgerald).

7. On 12/30/2020, after receiving numerous complaint by inmates regarding symptoms of Covid-19 Medical Staff conducted a second round of testing, for those inmates who had tested negative on 12/12/2020, subsequently revealing an additional 15-inmate postive cases. Those inmates were ordered to self-quaranine in their cells. (See Declarations Tommershea, Thomas & Austin)

8. On 01/12/2021, roughly 10-inmates who had tested positive for Covid-19 were removed from JA-Unit, due to their being immuneocompromised and the potential for spread or reinfection (See Decleration Edward Hill & Derek Thomas).

9. On 01/13/2021, JA-Unit was partialy opened, allowing inmates out-of-cell time but still not provided outdoor recreation/exercise.

10. On 01/21/2021, those quarantined in the SHU on 01/12/2021, were returned to JA-Unit.

11. On 01/22/2021, two-inmates in JA-Unit tested positive for Covid-19, placed in the SHU under quarantine and JA-Unit was once again locked down (See Decleration Jamie

12. On 01/23/2021, President Joe Biden signed an Executive order mandating those who entered a federal building/facility socially distance (6-feet) and wear a mask. FMC-Devens has failed to follow that order and has continued to double-cell inmates, making it impossible to socially distance (See Decleration John Ott & Jason Andolini).

13. On 01/23/2021, after repeated requests for psychology services from mentally distressed inmates, two intern psychology students were provided to inmates of JA-Unit for "treatment" that consisted on non-private disclosures through a cell door in earshot and sight of other inmates (See Decleartion Robert Burton).

14. On 02/06/21, prior to re-openning JA-Unit non-infected inmates were tested and for a third time revealed two-inmates testing positive for Covid-19 and once again putting the entire unit into quarantine (See Declaration Jamei Easter).

15. On 02/09/2021, JA-Unit was reopened, but inmates were still denied outside recreation.

## ARGUMENT

Petitioner Ahmed moves for a partial reduction in his sentence of months, due to his particular sentence being extremely harsh, pursuant to 18 U.S.C. §3582(c)(1)(A)(i), which provides:

> [T]he court, ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

-3-

>defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ..., after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction."

This remedy is sometimes colloquially referred to as "compassionate release," but as the Second Circuit has explained "compassionate release is a misnomer. 18 U.S.C. §3582(c)(1)(A) in fact speaks of sentence reduction. A district court could, for instance, reduce but not eliminate a defendant's prison sentence..." United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2000); see also United States v. Garcia, 2020 U.S. Dist. LEXIS 230236 (S.D.N.Y. Dec. 8, 2020)("the court, as noted, concludes that if it were imposing sentence on Garcia afresh, with full foresight of these conditions, it would have sentenced him to 240 months' imprisonment rather than 280 months, and the current extraordinary conditions therefore compel a reduction of his sentence by 40 months, to a total of 240 months.); United States v. Rodriguez, 2020 U.S. Dist. LEXIS 181004 (S.D.N.Y., Sept. 30. 2020)("The pandemic aside from posing a threat to [a defendant's] health, has made [a defendant's] incarceration harsher and more punative than would otherwise have been the case. This is because federal prisons, as 'prime candidates' for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal."); United States v. Mel, 2020 U.S. Dist. LEXIS 74491 (D. Md., Apr. 28, 2020)("[T]he actual severity of [defendant's] sentence as a result of the covid-19 outbreak exceeds what the court anticipated at the time of sentencing.").

A court evaluating a motion pursuant to §3582(c)(1)(A) must ask four questions: (I) has the defendant complied with the administrative exhaustion requirement, (II) has the defendant shown extraordinary and compelling reasons warranting a sentence reduction, (III) are the 18 U.S.C. §3553(a) sentencing factors consistant

-4-

with a lesser sentence than that previously imposed, and (IV) is there a particular sentence reduction consistent with the §3553(a) factors that is also warranted by extra ordinary and compelling reasons?

I. <u>Adminstrative Exhaustion Requirement</u>:

In April 24, 2021 Petitioner applied for compassionate release. On May 4th, 2021 Warden Amy Boncher denied Petitioner's request for compassionate release (See EXHIBIT - A, Denial). Petitioner has satified the administrative exhaustion requirement because Petitioner requested compassionate release from the Warden of his facility, who denied his request, and more than a month has passed since Petitioner request." <u>United States v. Henareh</u>, 2021 U.S. Dist. LEXIS 6855, *6 (S.D.N.Y., Jan. 13, 2021).

II. <u>Extraordinary And Compelling Reasons</u>:

Petitioner would argue extraordinary and compelling reasons are shown by: (A) Risk of reinfection; (B) deliberate indifference in violation of the Eighth Amendment; (C) Harsh/Oppresive conditions of confinement; (D) Other reasons. The culmative effect equating to extraordiary and compelling circumstances, pursuant to U.S.S.G. §1B1.13 -(1)(D)'s catch all provision.

A. <u>Risk Of Reinfection</u>:

Reinfection has sometimes been characterized as rare, the "understanding of reinfection has been constrained by the limited number of U.S. labs that retain covid testing samples or panform genetic sequencing." <u>Why the U.S. is underestimating covid reinfections</u>, Scientific America, JoNel Alecia, Feb. 8, 2021. Though at least one expert has tried to put into context: reinfections and prisons conditions (See EXHIBIT - B, Expert Tara Vijayan Decleration).

Many courts have recognized the risk of reinfection and its attendant severe outcomes. See <u>United States v. Hood</u>, 2020WL 6255904 (C.D. Ill., Oct. 23, 2020) (citing the existence of confirmend reinfections in the United States that

resulted in more severe results); <u>United States v. Barajas</u>, 2020 WL 3976991, at *10 (S.D.N.Y., July 2, 2020); <u>United States v. Hanson</u>, 2020 WL 3605845, at * 3-5(D. Or. July 2, 2020); <u>United States v. Jacobs</u>, WL 3637625, at * 5-6 (S.D. Iowa July 2, 2020). (See also EXHIBIT - C) Article NY Daily News "Repeat Covid-19 Infections Plague Fed. Prisons, Risk is driving Demands for Compassionate Release."Additionally, the fact that Covid-19 is regularly mutating and effecting the effecacy of the currect vacines shows additional extraordinary and compelling reasons why this Court should get ahead of the potential outcomes/scenarios for reinfection and GRANT relief..

## B. Deliberate Indifference to Health & Safety

Petitioner has presented facts to show/prove FMC Devens staff acted with "deliberate indifference" to Ahmed's health & safety, by mixing contagious inmates with healthy ones, resulting in Ahmeds contracting the deadlyCOvid-19 virus, in violation of the Petitioner's Eighth Amendment right in the U.S. Constitution, to be free of Cruel and Unusual Punishment. FMC DEVENS and the BOP continue to show negligent and deliberate indifferent behavior by mixing inmates from different Housing Units, Failing to follow social distancing guidelines, failing to mandate daily testing for Correctional Officers and staff and failing to enforce constant mask usage amongst staff and inmates. Prison officials have an obligation to protect prisoners from the risk of infectious diseases.See <u>Jolly v. Coughlin,</u> 76 F.3d 468, 477 (d Cir. 1996); <u>Helling v. Mckinney</u>, 509 U.S. 25, 33 (1993)(Citing cases condeming the failure to seperate prisoners with contagious diseases from others.); and <u>Kimble v. Tennis,</u> 2006 WL 1548950, *4 (M.D. Pa. June 5, 2006)(Deliberat indifference shown by releasing an inmate with MRSA back into general population who had open sores).

The Supreme Court has stated that "Deliberate indifference" to serious medical needs of prisoners constitutes the 'uncessary and wanton inflictions of paint'.... proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976): As with other EighthAmendment claims, the dliberate indifference standard requires a Plaintiff/Petitioner to show that the Defendant's/Respondant's had actual knowledge of an objectively cruel condition and did not respond reasonably to the risk. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Courts have acknowledged that extreme cases of bad Judgement by medical personell can constitute deliberate indifference. "medical treatment that is 'so grossly incompetent, inadequate, or excessive as to shock the conscious or to be intolerable to fundamental fairness' constitutes deliberate indifference." Adams v. Poag, 61 F.3d 1537, 1543-44 (4th cir. 1995); see also Collingnon v. milwauke County, 163 F.3d 982. 989 (7th Cir. 1998)("A plaintiff can show theprofessional disregarded the need only if the professional's subjective responsewas so inadequate that no minimally competent professional would have so respondedunder those circumstances).

In the instant motion/facts, FMC Devens subjective response in controlling the spread of the COVID-19 ovirus was unreasonable by: failing to properly quarantine infected inmates, allowing them to quarantine in their cells, in JA-Unit; failing to properly screen-out inmates returning from the SHU on 12/24/2020. Who were still exhibiting symptoms of COVID-19 and being contagious, the use of COVID-19 infected/contagious inmate orderlies between 12/17/2020 through 01/03/2021. These failures resulted in roughly 90% of JA's inmates contracting COVID-19, to include petitioner (SEE Exhibit-D, Medical Report Covid Results). Petitioner strongly

argues <u>no</u> competent professional would argue or condone the mixing of contagious inmates with healhy ones; or allow safety protocols to be violated; or utilize inmate orderlies, who continously violated quarantine protocols established by the CDC and FBOP. It should not be argued the service of a sentence in violation of the constitution does not equate to "extraordinary and compelling reasons," requireing relief from the court.

C. Conditions Of Confinement:

Petitioner additionally argues his sentence, under FMC DEVENS modified operational schedule has denied him needed and constitutionally protected programs, making this time deemed harsh and/or excessive <u>Recreation and excercise:</u>Excercise is one of the basic needs that prison officials <u>Must Provide   under the Eighth Amendment.</u> See <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991)("Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement ofr mental well being.") From April 2020, through April 2021 under FMC DEVENS modified operational schedule, inmates were propvided infrequent (2-3 times per week) outdoor recreation/exercise. From December 12, 2020to Februrary 22nd, 2021, JA Inmates received no recreation

<u>Visitation/Communication with the outside:</u> The Federal Constitution provided very little protection for visiting in prison. Although visting is an aspect of the right to free association. See <u>Overton v. Bazzetta</u>, 529 U.S. 126 (2003). Petitioner does not argue FMC Devens prohabition against visitation was unreasonable, he argues during the December 2020 outbreak he was provided no access to telepohones, EMAILS or the ability to purcahse stamps, in order to converse and relay or aleviate his loved ones concerns or

potentially communicate his last words. See <u>Johnson v. State of California</u>, 207 F.3d 650 (9th Cir. 2000)("Inmates have a First Amendment right both to communicate with non-prisoners over the telephone ... In addition, denying access to telephones may violate an inmate's right to counsel and right to inmate association.)

Prisoners have a First Amendment right to communicate by mail, See <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003), however these rights may be restricted by prison officials. Reasonable restrictions in the purcahse of postage and supplies by non0indigent prisoners will be upheld, See <u>Davidson v. Mann</u>, 129 F.d3 700, 702 (2d Cir. 1997), but the wholesale ban on the purchase of stamps would violate not only an inmates First Amendment right to freedom of associatation & speech, but a denial of access to court. See <u>Bounds v. Smith</u>, 430 U.S. 817, 824-25 (1997); See also <u>Chandler v. Coughlin</u>, 763 F.2d 110, 114 (2d Cir. 1985). Petitioner asserts and argues FMC DEVENS actions pertaining to restrictive communications with the outside were calculated and done to cover up and mitigate the disemination of their failures in dealing with the outbreak/spread and other definciences by staff, as demonstrated by no phone access or purchase of stamps.

D. Additional Reasons

Petitioner argues the excessive lockdowns and lack of adequate psychological services from April 2020 to April 2021m have caused him anxiety and stress. Had FMC DEVENS executive staff made these services available during the continuous lockdownsm I feel that my mental state would have not been so drastic. Petitioner now suffers from severe anxiety and stress whenever he is locked in his cell, not knowing if it will be the last time he will be free. Failure to provide adequate mental health servbices during the lockdowns is a violation of the Eighth Amendment.(See EXHIBIT H)

-9-

Family Suffering

Ahmed's family has been facing financial and psychological hardship which is a common result of one's committing a crime and being improsoned. However, Petitioner argues that his family faced a unique challenge by continously being ignored by FMC DEVENS when calling in to ask whether Mr. Ahmed was even still alive or dead after contracting COVID-19. (See Declaration byDeela)

III.     The 3553(a)Sentencing Factors:

When extraordinary and compelling reasons are established, the court must consider the relevant sentencing factors in §3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. §3582(c)(1)(A)(i). Petitioner has been incarcerated 25 months, having served approximately 45% of his sentence(based on good time credits and home confinement), imposed by this court. Petitioner is scheduled to be released December 2023. Under all of the circumstances in this case, the court should conclude that the sentence petitioner has already served is sufficient to satisfy the purposes of sentencing. Pursuant to Pepper v. United States, 562 U.S. 476, 490-93 (2011), the Court can, and indeed must, consider post-offense developments under §3553(a).

Although the circumstances of the present offense qualified Petitioner for the serious sentence this court originally imposed, the sentencing purposes of punishment does not warrant a sentence to include exposure to a lifethreatening illness (COVID-19). In face the Eighth Amendment prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody, Helling v. Mckinney, 509 U.S. 25, 28 (1993); See also Wallis v. Baldwin, 70 F.3d 1024, 1076 (9th Cir 1995) (applying Helling to exposure to asbestos); Brown v. Mitchell, 327 F.Supp. 2d 615 (E.D. Va. July 28, 2004) (Applying Helling to contagious

diseases caused by overcrowded conditions). Serving a sentence in violation of the U.S. Constitution does not "promote respect for the law".

Petitioners conduct while incarcerated establishes that the purposes of punishment have been met (See Exhibit E). Under Pepper, the court must also consider "the most up to date picture" of the petitioners history and characteristics which "sheds light on the likelihood that [the petitioner] will engage in future criminal conduct" Id. 562 U.S. at 492. Petitioner argues that he has rehabilitated himself and accepted full responsibility and is remourseful for his actions. He has engaged in numerous educational programs. However, he /is unable to participate in more programs due to the pandemic. Petitioner has maintained constructive hobbies and only associated with positive individuals. Petitioner has incured one minor infraction. Otherwise, Petitioner has maintained clear conduct and has scored a low on an assessment that indicates risk of recidivism(BOP PATTERN SCORE). Along with Dr. Catherine Barber's pre-sentencing report which also indicates that petitioner is a low risk, these factors show that Petitioner is no threat to his community. (See Exhibit F).

This Court originally sentenced Mr. Ahmed to get treatment for "Computer Addiction" which the BOP does not offer. Petitioner has tried to enroll himself into FMC DEVENS residential sex offender treatment program when he first arrived on Novemer 7, 2019 but was told he didn't qualify due to his crime being a non-contact offense and that the program is a 19 month intensive treatment program for serious sex offenses. Petitioner has tried to enroll into the less intensive non-residential program in FCI Elkton Ohio but his request was ignored. Petitioner was able to sign up for one-on-one therapy sessions for his depression and anxiety

in 2019 but was told there was a long wait due to there only being three psychology interns being shared amongst a thousand inmates. Soon after that, the pandemic swept prisons across the U.S. and all programming/mental health activities were put on indefinite pause. Petitioner could find more appropriate treatment outside the prison system much more easily while quarantined at home. Requesting Mr. Ahmed to serve out the remaining months of his sentence at FMC DEVENS during the restrictions caused by the pandemic will actually result in diminishing returns to him and socciety as a whole. See United States v. Gentille, No 19 Cr. 590 (KPF), 2020 U.S. Dist. LEXIS 62680, 2020 WL 1814158, at *4 (S.D.N.Y.) APR. 9, 2020). Petitioner by his conduct and utilization of programs while incarcerated show he is not a threat and has been rehabilitated.

More immediately relevant are certain other §3553(a) factors such as "the kind of sentences available", "the need for the sentence imposed... to provide just punishment for the offense [and] to afford adequate deternce to criminal conduct", and "the need for the sentence imposed... to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §3553(a)(2)(3). Viewed through these lenses, the sentence petitioner is now serving looks materially different from the sentence the court envisioned.

Some of these differences affect all inmates during the pandemic, such as constant lockdowns and other unusually severe conditions of confinement necessary to reduce the risk of COVID-19 infection in the close quarters of prison. Another difference,

while not affecting the entire Federal prison population, was sadly widespread at FMC DEVENS: the overwhelming risk of contracting COVID-19, but most importatantly, unlike most inmates at FMC DEVENS or otherwise, Petitioner did suffer serious mental truama at the risk of illness or death when infected with covid and was denied acess to communications with his family for several months long lockdowns. The Court plainly must consider the risk of serious illness or death to which petitioner was exposed to when assessing the "kinds of sentence available". as well as whether a sentence reflects "just punishment" and whether the sentence provides petitioner with needed medical care, training and other correctional treatment.

Furthermore, both the increased risks faced by vulnerable individuals like petitioner and the heightened restriction imposed upon all prisoners during the pandemic may enhance a deterent effect of prison sentences served during the pandemic by making the conditions of confinement harsher, both physically and psychologically, than they would otherwise normally be.

Petitioner argues a modest reduction in the length of his sentence would be appropriate. If at the time of sentencing the Court had been aqare of the conditions of confinement petitioner would face, then arguabley it would have found a term of somewhat less than 78 months improsontment to be sufficient, but not greater than necessary, to achieve the purposes of sentencing.

IV.   Sentence Reduction Consistent with §3553(a):

Finally, the Court should ask whether there is a sentence reduction consistent with the §3553(a) factors that is warranted by the extraordinary and compelling reasons. A motion for sentence

reduction can be granted only where there is a nexus between the two because the Court may reduce a defendants sentence only if the "extraordinary and compelling reasons warrant such a reduction", 18 U.S.C. §3582(c)(1)(A)(i)(emphasis added).

While Courts rarely consider this nexus requirement explicitly, it comes into focus when a court considers granting a partial reduction in sentence, rather than immediate compassionate release. Here the nexus is apparent because the Court can conclude it does not find that a risk of imminent illness or death constitutes extraordinary and compelling circumstances. Rather, the Court should find that the unexpectedly harsh punishment to which petitioner has been subjected and the service of his sentence in violation of the Eighth Amendment constitute extraordinary and compelling circumstances warranting a partial reduction in sentence. Petitioner argues his contracting the COVID-19 virus due to reckless decision making by FMC DEVENS requires a serious reduction for a serious violation. To make petitioner whole for the violation he is requesting a 12-24 month reduction. The hashness of his sentence as stated in the foregoing, should be reflected by a 1-to-1 reduction for 1 year, the toptal reduction equating to a 24-36 months.

Prayer/Conclusion

Petitioner humbly prays this Honorable Court consider not only immediate release, but also a sentence reduction. Most notably, the severity of petitioners sentence has been effectively increased because -- through the BOP's failures at FMC DEVENS, Petitioner was forced to confront a risk of serious illness and death, along with the psychological toll that entailed. Tobe sure, the vast majority of petitioners fellow inmates at FMC DEVENS were also infection. Ahmed faced an especially harrowing ordeal and high risk of illness.

Several of Ahmed's fellow inmates did not survive (11) their infections, including close friends hes made while incarcerated at FMC DEVENS. Fortunately, petitioner did survive but that does not detract from the serious risk he faced because of FMC DEVENS' ineptitudes.

WHEREFORE, for showing of good cause, based on the foregoing facts and argument, Petitioner makes the following requests for relief:

1. The Court reduce Petitioners sentence by 12-24 months or,

2. The Court sua sponte reduce petitioners sentence to time served; and/or

3. The appointment of Counsel, should this court require a hearing on the merits of petitioners claim; or

4. Any other relief this Honorable Court deems appropriate.

I, Nader H. Ahmed, do hereby declare under the penalty of perjury, pursuant to 28 U.S.C. §1746, the foregoing facts presented in this motion for partial reduction in sentence are true and correct.

DATED: May 10, 2021

*Nader Ahmed*

NADER AHMED #72040-050
FMC DEVENS
P.O. BOX 879
Ayer, MA 01432

-15-